UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

DAVID E. THOMPSON,

        Petitioner,

        v.                                  Case No. 06-C-1129

WILLIAM POLLARD,

        Respondent.

---

DECISION AND ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE
OF APPEALABILITY, AND DISMISSING CASE

        This matter is before the court on David E. Thompson's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following multiple adjournments, a Milwaukee County Circuit Court jury convicted Thompson on charges of armed robbery and possession of a firearm by a felon. (Ex. A.) He was sentenced to a forty-year bifurcated term on count one and a concurrent five-year term on count two. (*Id.*) On November 7, 2001, Thompson filed a Notice of Intent to Pursue Postconviction Relief. The motion, filed on August 14, 2002, was predicated on Thompson's assertion that his right to confrontation was violated when the State cross-examined him about a statement he had made to a friend, Keith Lee, but failed to introduce extrinsic evidence of the statement. The Court of Appeals affirmed Thompson's conviction in an unpublished decision of September 30, 2003. (Ex. F.) The Wisconsin Supreme Court denied his petition for review on December 16, 2003, and Thompson did not file a petition for writ of certiorari with the United States Supreme Court.

On December 15, 2004, Thompson filed a § 974.06 motion with the Circuit Court, which was denied without a hearing on December 21, 2004. (Ex. B) Thompson claimed that his postconviction counsel was ineffective in failing to raise several claims of ineffective assistance by trial counsel. Thompson appealed the order denying his § 974.06 motion to the Wisconsin County of Appeals, which affirmed in an unpublished opinion dated June 20, 2006. (Ex. K.) The Supreme Court denied his petition for review on September 11, 2006.

Under the Antiterrorism and Effective Death Penalty Act, a federal court may grant a petition for habeas relief from a state court judgment only in one of two limited circumstances: the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *Smith v. Grams*, 565 F.3d 1037, 1043 (7th Cir. 2009). The federal court is to presume that the state court's factual determinations are correct, and the petitioner may rebut this presumption only by clear and convincing evidence. *Id.* (citing § 2254(e)(1)). The petitioner "bears the burden of showing that the state court's finding of fact or its application of federal law was not only erroneous, but unreasonable." *Id.* Under the "unreasonable application" prong of § 2254(d)(1), it is not enough for the federal court to simply disagree with the conclusion of the state court; the state court's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. *Middleton v. McNeil*, 541 U.S. 433, 436 (2004).

2

When the petitioner bases his claims on ineffective assistance of counsel, there is an additional layer of deference. The court begins with the presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Thompson v. Battaglia*, 458 F.3d 614, 620 (7th Cir. 2006). Then, even if counsel's performance was deficient, the petitioner must demonstrate that any error prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To succeed on the prejudice prong of *Strickland*, the petitioner must demonstrate that there is a reasonable probability that he would have prevailed and been acquitted. *Id.*, at 694.

In his pending § 2254 petition, Thompson argues that appellate counsel (presumably postconviction counsel who filed the initial motion as part of his direct appeal) was ineffective in failing to raise ineffective assistance of trial counsel, as well as the State's failure to preserve exculpatory evidence. Thompson maintains that trial counsel was ineffective in the following respects: (1) not objecting during the State's cross-examination of Thompson regarding an admission allegedly made by Thompson to a third-party; (2) not issuing a subpoena to Thompson's sister who would have testified that Thompson was at her house watching cartoons on the day of the robbery; and (3) not raising a claim that the State failed to preserve exculpatory evidence. As a final matter, Thompson asserts that he was denied the right to confront a witness.

Ultimately, Thompson has not shown that the Wisconsin Court of Appeals decision was contrary to or an unreasonable application of *Strickland* or any other Supreme Court precedent. Moreover, the decision was not based on an unreasonable determination of the facts in light of the evidence presented in state court. As will be

3

explained below, Thompson has procedurally defaulted on the claim that the State failed to preserve exculpatory evidence. Finally, the appellate court's determination that Thompson waived his confrontation claim by not objecting at trial constitutes an independent and adequate state ground.

Because Thompson never directly challenged the State's failure to preserve exculpatory evidence, this court cannot reach the merits of this claim unless he demonstrates: (1) cause for the default and actual prejudice from failing to raise the claim as required; or (2) enforcing the default would lead to a fundamental miscarriage of justice. *Steward v. Gilmore*, 80 F.3d 1205, 1211-12 (7th Cir. 1996) (*quoting Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977)).

Thompson blames his procedural default on counsel. *See Coleman v. Thompson*, 501 U.S. 722, 753-54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (attorney error rising to the level of ineffective assistance can constitute cause to set aside procedural default). To make this showing, Thompson must show that his lawyer's failure to raise these issues on appeal fell below an objective standard of reasonableness under prevailing professional norms and that this omission prejudiced him. *Strickland*, 466 U.S. at 668. Notably, Thompson does not attempt to establish the elements of an "actual innocence" claim under the exacting standards of *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), to excuse his procedural default under the "fundamental miscarriage of justice" doctrine.

Thompson first raised the issue off ineffective assistance in his postconviction motion. There, Thompson alleged that trial counsel was ineffective for failing to demand inspection of a surveillance camera tape or to call Detective Timothy

4

Zens as a witness to introduce evidence that the tape did not show the defendant inside Warehouse Electronics, when his alleged co-actors inquired about changing the vehicle's tires. Milwaukee Circuit Court Judge Jeffrey A. Conen denied the motion citing Zens' testimony that he was unable to observe the auto or the suspects in the store from the videotape but that the surveillance camera did not cover the entire garage area. (Petition for Writ of Habeas Corpus, Att.) According to Judge Conen, such evidence did not undermine the outcome of the case because it did not exculpate Thompson. In other words, that Thompson was not visible in the videotape does not establish that he was not at the store. Moreover, there was no reasonable probability that such evidence would have affected the jury's verdict given the "powerful eyewitness identification of the defendant." (*Id.*)

> The Wisconsin Court of Appeals similarly rejected Thompson's claim:
>
> The tape does not show everyone who entered the store. Therefore, the fact that Thompson does not appear on the tape does not prove that he was not in the store. Based on the limitations of the tape, it was reasonable for trial counsel to elect not to subpoena or offer the surveillance tapes.

(Ex. K.) In addition, the Court of Appeals rejected argument that postconviction counsel was ineffective for failing to assert that he was denied due process when the State failed to preserve potential exculpatory evidence. (*Id.*) However, because this claim rested on Thompson's mistaken belief that the tape showed everyone who entered the store, the evidence does not support it. (*Id.*)

Ultimately, Thompson's argument is based on speculation inasmuch as Detective Zens' did not observe Thompson in the tapes. However, Detective Zens stated that the tapes did not show all areas of the garage. Moreover, nothing in the record

5

suggests the tapes covered all areas of the Warehouse Electronics store and the garage. Given the inherent limitations of the tapes which would not establish whether Thompson was present, it was neither contrary to nor an unreasonable application of *Strickland* to find that counsel's performance respecting the video tape and decision not to call Detective Zens was not deficient. Moreover, there was substantial evidence at trial against Thompson, including the eyewitness identifications of Thompson by the victim (who testified that a majority of the time during the carjacking he was looking at Thompson as Thomspon held a gun), the victim's friend (who witnessed Thompson driving the victim's car the next day), and from the owner of Warehouse Electronics. Further, officers testified that the victim's keys and car stereo were found in the car in which Thompson was riding at the time of his arrest. Thompson, on the other hand, testified that he could not remember the specifics of the date of the incident other than he spent time at his sister's home and went to his mother's home at 9:30 p.m. He could not recall if he had breakfast or lunch or how long he was at his mother's house. Based on the overwhelming evidence of guilt, the court properly concluded that there was no prejudice.

Next, Thompson argued that trial counsel failed to properly object to the State's improper cross-examination. During cross-examination, the prosecutor asked Thompson about a prior statement he purportedly made to an acquaintance, Keith Lee, while admitting to the offense.

> Q             So if Keith Lee were to come and say on July 14th, 2000, one, you called him and told him when you called him on that cellular number that I gave you and said that you just robbed someone and stole a car –
>
> [Thompson's Atty]   Objection. This is facts [sic] not in evidence.

6

| THE COURT | Sidebar. |
|---|---|
| (Whereupon, discussion held off the record at sidebar) | |
| THE COURT | Rephrase the question. |
| [Prosecutor] | Sure. |
| Q | You called Keith Lee on July 14, 2000, didn't you? |
| A | I didn't call Keith. |
| Q | And in fact, you told Keith that you had actually just stolen a car and robbed someone? |
| A | I didn't say that. |
| Q | And the number that you called was 617-7871. |
| A | I never called – called Keith, never talked to Keith on his cell phone. Not that I recall. |

(Ex. T, p. 133.) At the conclusion of the State's rebuttal case, Thompson's counsel did not object to the State's failure to call Lee or present other substantive evidence of the alleged prior inconsistent statement. However, in closing arguments, defense counsel referred to the State's questioning about the Lee phone call:

> I want to point out that at one point [the prosecutor] asked my client on the stand that if somebody said that you had admitted doing this, they would be lying, right? There is no evidence anywhere in the trial. That was a question. The Judge will instruct you that questions are not evidence. There is no evidence that my client said to anyone including [the district attorney] that he did this ....
>
> There is [sic] no fingerprints. There is [sic] no fingerprints on the keys. No fingerprints on the stereo. No physical evidence to link David Thompson to this stolen car.

(Ex. U, p. 24.) The Circuit Court then instructed the jury as follows:

7

> Remarks of the attorney are not evidence. If the attorneys' remarks implied the existence of certain facts not in evidence, disregard any such implication. Draw no inference from those remarks.

(*Id.*, p. 41.)

Judge Conen denied Thompson's motion for a new trial in part because Thompson was not prejudiced even if the questions were improper for the following reasons:

> The jury heard evidence that the victim was able to identify the defendant from the day of the robbery and from the next day when the defendant was arrested. The jury heard testimony from a friend of the victim who witnessed the defendant driving the victim's car on July 15, 2000. The jury also heard testimony from a business owner that the defendant was in his business on July 15, 2000 inquiring about a change in the victim's car tires. Finally, the jury heard the investigating police officers testify that they found the victim's car keys and stereo equipment in a vehicle occupied by the defendant at the time of his arrest. The defendant testified that he could not remember the specifics of the date of the incident, other than he spent the day at his sister;'s house. Based upon overwhelming evidence of guilt, the court finds that the outcome of the trial was not affected by the prosecutor's questions. Consequently, a new trial is not warranted.

(Petition for Writ of Habeas Corpus, Att.)

On appeal, Thompson contended that the State's failure to offer substantive evidence of his alleged out of court prior inconsistent statement after cross-examining Thompson about it violated his right of confrontation. The Wisconsin Court of Appeals held that the narrow objection by counsel was inadequate to preserve a claim on confrontation grounds. (Ex. F.) Hence, any argument based on the right to confrontation was deemed waived. Moreover, the State's cross-examination was proper under Wis. Stat. § 906.13(2)(a), which permits the questioning of a witness about a prior inconsistent

8

statement before extrinsic evidence is offered. (*Id.*) Judge Conen properly declined to sustain his objection and the State was under no obligation to present evidence of the prior inconsistent statement before questioning Thompson about the alleged phone call on cross-examination. (*Id.*)

In denying Thompson's pro se motion for postconviction relief, Judge Conen held that postconviction counsel was not ineffective for failing to raise ineffective assistance of trial counsel on this issue. Again, Judge Conen found that trial counsel was not ineffective where Thompson was not prejudiced by the prosecutor's questions. (Petition for Writ of Habeas Corpus, Att.) The Court of Appeals agreed for three reasons. (Ex. K.) First, all of the cases cited by Thompson were distinguishable. Second, if defense counsel objected, the State would have called Lee who was prepared to testify with respect to this evidence. Forcing the State to call Lee would have resulted in direct testimonial evidence regarding the phone call and admission which would have strengthened the State's case. Third, any error was cured by the trial court's jury instruction advising that remarks of the attorneys do not constitute evidence and that the jury should base its decision only on the evidence and inferences drawn therefrom. Where defense counsel emphasized that there was no evidence that Thompson told Lee he had stolen the car and the jury was properly instructed, the appellate court found no prejudice based on trial counsel's failure to object.

To the extent that Thompson is attempting to raise a claim that his right to confrontation was denied when the State failed to call Lee as a witness or to introduce evidence of Thompson's statement to Lee, the State court's finding that Thomspon waived the claim by not objecting on confrontration grounds is an adequate and independent state

9

law ground supporting the state appellate court's resolution of the matter. Further, Thompson cannot satisfy the prejudice prong of *Strickland*. Thompson conceded that Lee was available to the State to testify about his statement. Moreover, counsel strategically made the decision to object the first time that the prosecutor referenced the statement allegedly made by Thompson to Lee and participated in a sidebar. When the prosecutor used the same line of questioning after the sidebar, counsel did not object but referenced the absence of substantive evidence in his closing:

> I want to point out that at one point Ms. Carmody asked my client on the stand that if somebody said that you had admitted doing this, they would be lying right? There is no evidence anywhere in the trial. That was a question. The Judge will instruct you that questions are not evidence. There is no evidence that my client said to anyone including her that he did this.

The circuit court similarly instructed the jury that remarks of counsel are not evidence. The prosecutor never again mentioned the alleged statement. Thus, in light of the overwhelming evidence discussed above and in the absence of any showing that there is a reasonable probability that the result of the trial would have been different had counsel objected to the State's questions after the sidebar, the state courts' determination that Thompson was not prejudiced does not constitute an unreasonable application of *Strickland*.

Finally, Thompson maintains that counsel was ineffective in failing to subpoena Cassandra Thompson as an alibi witness. According to Thompson, Cassandra would have corroborated his testimony that he was at her home watching cartoons on the date of the carjacking. Further, she would have testified that he could barely walk because he had been shot in the leg weeks earlier and had just had a cast removed the day before.

Thompson supported his claim with a letter in which Cassandra stated that she appeared for the original trial date but did not appear for the rescheduled trial date because she feared she would be arrested on an outstanding traffic warrant.

Trial counsel requested an adjournment after his attempts to subpoena a fourth alibi witness were unsuccessful. In addition, postconviction counsel advised Thompson at the time he filed the motion that he did a "fair bit of research" on Cassandra's failure to testify at trial noting the different versions in her account of what she had been told by detectives. He further advised Thompson as follows:

> According to your trial attorney, Joe Reback, your sister did speak with him about her concern over the warrants. However, he does not recall her telling him that she had been threatened with arrest by the detectives. Rather, she recalls her telling him that she was aware of the warrants and that she was worried about coming back to testify because of their existence. He informed me that he advised her she could take care of the warrants with a single court appearance and probably would not have to appear at all had she paid the tickets. My belief is that the court, should this issue be raised, would find that you were not prejudiced by what the detectives apparently said to your sister, but rather by your sister's decision not to take care of her warrant in time so that she could appear on your behalf.

(Ex. B, pp. 18-19.)

In denying Thompson's postconviction motion on this ground, the trial court found nothing in the record to show that Cassandra Thompson would have made herself available on the trial date had she been subpoenaed. Moreover, her testimony that Thompson could barely walk contradicted his testimony that he walked to his mother's home that day.

For the same reasons, the appellate court concluded that defense counsel was not deficient in failing to subpoena Cassandra for trial. Reasonable efforts were made to get Cassandra to appear yet she did not appear based on her personal concerns. Further, Cassandra's testimony would not have resulted in a different outcome inasmuch as it contradicts Thompson's testimony that he walked to his mother's house.

Not only was counsel not deficient under *Strickland*, but there is no reasonable probability that the outcome of Thompson's trial would have been different. Because the court has found no merit with respect to all of Thompson's ineffective assistance of counsel claims, none of them would entitle him to relief. Moreover, the state courts fully considered and rejected Thompson's ineffective assistance of counsel claims in postconviction proceedings. Consequently, the court denies Thompson's request for an evidentiary hearing in this case. *Ward v. Jenkins*, 613 F.3d 692, 698 (7th Cir. 2010).

As a final matter, the court must decide whether to grant Thompson a certificate of appealability. Thompson is entitled to a certificate only if he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, the court grants a certificate of appealability if "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 335 (2003). The court first finds the issues that were procedurally defaulted could not have been resolved in a different manner. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (where it is not debatable that an issue is procedurally barred, the Court should not grant a certificate of appealability on that issue.) The

remaining ineffective assistance of counsel issues were adequately developed and are not undeserving of further review. Now, therefore,

  IT IS ORDERED that David E. Thompson's petition for writ of habeas corpus is denied.

  IT IS FURTHER ORDERED that this case is dismissed.

  IT IS FURTHER ORDERED that a certificate of appealability is denied.

  Dated at Milwaukee, Wisconsin, this 6th day of December, 2010.

          BY THE COURT

          /s/ C. N. Clevert, Jr.
          C. N. CLEVERT, JR.
          CHIEF U. S. DISTRICT JUDGE